ASH

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hunter Alan Finkle,<br><br>    Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Defendants. | No. CV 14-1343-PHX-DGC (MHB)<br><br>**ORDER** |

   Plaintiff Hunter Alan Finkle, who is confined in the Arizona State Prison Complex-Florence ("ASPC-Florence") in Florence, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed *In Forma Pauperis* (Doc. 2). The Court will order Defendants Fizer, Norris, Parker and Smith to answer the Complaint and will dismiss the remaining claims and Defendants without prejudice.

**I. Application to Proceed *In Forma Pauperis* and Filing Fee**

   Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

TERMPSREF

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

### III. Complaint

In his Complaint, Plaintiff names as Defendants: Charles L. Ryan, Director of the Arizona Department of Corrections ("ADOC"); Fizer, Deputy Warden at ASPC-Florence; Hetmer, Warden at ASPC-Florence; Keith Smith, a security administrator with the ADOC; Evans, a Lieutenant at ASPC-Florence; Brown, a Sergeant at ASPC-Florence; Norris, a Sergeant at ASPC-Florence; Parker; a Sergeant at ASPC-Florence; and French, a mental health doctor at ASPC-Florence.

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to place him in protective custody. According to Plaintiff, between May and June of 2007, Plaintiff was housed in the Yavapai County Jail. While there, Plaintiff observed another inmate kill a bird and spit its carcass at a jail officer. The next day, Plaintiff was questioned by a jail supervisor about the incident. Plaintiff answered the supervisor's questions, and his statements aided in the prosecution of the other inmate for charges related to animal cruelty. As a result of his cooperation with the Yavapai County Jail officers, Plaintiff was labeled a "snitch" by other inmates.

Between June and July of 2007, two of Plaintiff's cellmates were ordered – by a third inmate named Sean Patrick Kyle – to assault Plaintiff because he was a "snitch." Officers at the Yavapai County Jail realized that Plaintiff was in danger, and placed him in protective custody.

Later in 2007, Plaintiff was transferred from the Yavapai County Jail to ASPC-Florence and was housed in the Cook Unit. In June of 2008, Plaintiff was approached by an inmate named Ty Randell. Randell threatened to tell the Aryan Brotherhood – a violent prison gang – that Plaintiff was a "snitch" unless Plaintiff paid Randell $20 every two weeks. Plaintiff agreed to pay Randell protection money, until, a week later, he requested that he be placed in protective custody due to Randell's extortion scheme and his fear of the Aryan Brotherhood. Plaintiff was put through the 805 process – which is the ADOC's process for determining whether protective custody is necessary and appropriate – but protective custody was denied. However, Randell was placed on

TERMPSREF

1   Plaintiff's "Do Not House" list.[1]  Plaintiff asserts that the Aryan Brotherhood has a
2   standing rule to harass, assault, and, if possible, kill any inmate known to be a "snitch."
3   Plaintiff also asserts that the Aryan Brotherhood has an identical rule for those known to
4   have requested protective custody.

5   On November 25, 2010, Randell was able to gain access to Plaintiff's cell block
6   due to Randell's job as a porter.  Randell informed all of the other inmates in the cell
7   block that Plaintiff was a "snitch" and that Plaintiff had requested protective custody.  As
8   a result, on December 3, 2010, Plaintiff informed Defendants Fizer and Brown via a letter
9   that he was in danger, was receiving threats, felt he would be assaulted, and needed
10  protective custody.  Fizer and Brown advised Plaintiff that they would put his letter in the
11  report box.  On December 15, 2010, after receiving no response to his letter, Plaintiff
12  asked Defendant Brown if he would be receiving a response.  Defendant Brown
13  responded that he was going home in 20 minutes, and that it was not his problem.

14  On December 24, 2010, Defendant Brown went to Plaintiff's cell and informed
15  Plaintiff that Plaintiff would be switching cells with an inmate named Randolph in the
16  same cell block.  While walking to his new cell, Plaintiff was assaulted by Randolph,
17  who was outside of his cell in violation of prison policy.  Plaintiff asserts that Randolph's
18  assault was prompted by Randell's presence in the cell block on November 25, 2010.
19  After the assault, but still on December 24, 2010, Plaintiff again requested protective
20  custody from Defendant Brown.  Defendant Brown began the 805 process for Plaintiff.

21  On January 3, 2011, while the 805 process was ongoing, Plaintiff was interviewed
22  by a "SSU J. McCune" about why Plaintiff was seeking protective custody.  Plaintiff
23  recounted the issues he was having and why he was in danger, including his previous
24  cooperation with the Yavapai County Jail officers.  McCune informed Plaintiff that he
25  had called Yavapai County and put all of the information he received from Yavapai
26  County into the Plaintiff's 805 file.  Nevertheless, Plaintiff was denied protective custody

---

[1] The "Do Not House" lists are used by ADOC to keep inmates separated who have known problems with each other.

on February 17, 2011. His appeal of that decision was denied on March 2, 2011. Sometime later in 2012, Plaintiff's family called ADOC's central office asking that Plaintiff's protective custody request be reconsidered. Again, the protective custody requests were denied. On June 19, 2012, Plaintiff again sought protective custody, and was again denied.

On January 16, 2013, an inmate nicknamed "Dirt Bike" handed Plaintiff a note while Plaintiff was walking to the shower. The note indicated that "Dirt Bike" knew of Plaintiff's "issues," and stated that "Dirt Bike" could fix those issues if Plaintiff would assault another inmate. "Dirt Bike" told Plaintiff that he (i.e., Plaintiff) was to stab a particular inmate the next day during recreation, and gave Plaintiff a prison-made knife with which to do so. "Dirt Bike" further told Plaintiff that if Plaintiff did *not* stab the other inmate, then Plaintiff would be killed.

The next day, after refusing to go out to recreation, Plaintiff informed a jail officer about the situation and requested protective custody. Shortly thereafter, another jail officer came to Plaintiff's cell asking what was going on. Plaintiff explained to the officer about the threat against him, and told the officer where the knife and "Dirt Bike's" letter were in his cell. The Plaintiff was removed from his cell, and brought to the yard office, where Defendant Evans filled out the 805 process paperwork. Defendant Fizer was also present and told Plaintiff, "Thanks for doing the right thing."

In February of 2013, Plaintiff's protective custody request was denied. An appeal of that decision was also denied. On May 23, 2013, Plaintiff again requested protective custody, and was again denied.

On or about August 19, 2013, Plaintiff attempted suicide by hanging himself from a light fixture in his cell. The attempt failed when the light fixture broke. As a result, Plaintiff was moved to Kasson Unit 2-B-32. On August 24, 2013, Plaintiff notified Control Officer Sauceda that he (i.e., Plaintiff) was in danger in Kasson Unit. Plaintiff told Sauceda that the inmate in cell 2-B-19, Ronald Doty, was telling an inmate known as "Mike" in cell 2-B-31 to shoot Plaintiff with a prison-made dart gun. Plaintiff asked

Sauceda to ask Lieutenant Hernandez to move Plaintiff out of Kasson Unit and into a unit with solid doors on the cells. Plaintiff was removed from Kasson Unit on August 28, 2013.

On September 27, 2013, a Control Officer named Castro removed Plaintiff from his cell because Castro had received information that Plaintiff was going to be assaulted. Castro took Plaintiff to the yard office and told the Lieutenant on duty what she (i.e., Castro) had learned. The Lieutenant told Castro and Plaintiff that he had received the same information on September 24, 2013 and had filed an incident report. Plaintiff told the Lieutenant that he (i.e., Plaintiff) was on a list to be assaulted or killed by the Aryan Brotherhood. Plaintiff asked the Lieutenant why he had not been moved off the yard when the Lieutenant learned of the threat to Plaintiff. According to Plaintiff, the Lieutenant responded that "stuff like that happened in prison." This caused Plaintiff extreme emotional distress, and he stated that he could not go through the 805 process again and that he wanted to kill himself. As a result, Plaintiff was returned to Kasson Unit and placed on suicide watch.

On September 30, 2013, Plaintiff was approved to come off of suicide watch. That same day, Plaintiff requested to see Defendant Norris, a Sergeant at ASPC-Florence. The Plaintiff met with Defendant Norris, and was asked by Defendant Norris why he had been placed on suicide watch. Plaintiff recounted to Defendant Norris the events on September 27, and asked Defendant Norris to look up the incident report the Lieutenant had referred to, and for Defendant Norris to begin the 805 process for Plaintiff. Defendant Norris refused to initiate the 805 process himself, but gave Plaintiff the 805 form to fill out on his own. Plaintiff filled out the form, noting the threats against him and the reasons behind them. Defendant Norris took the form and left, but returned several minutes later with Defendant Parker. Defendants Norris and Parker then informed Plaintiff that they would not grant him the 805 process because there was no evidence of a threat on his life. Plaintiff again asked for Defendant Norris to look up the Lieutenant's incident report from September 24, but Defendant Norris refused.

After denying Plaintiff the 805 process, Defendants Norris and Parker told Plaintiff that he was being placed in unit 2-B-19. Plaintiff reminded Defendant Norris that Norris had approved Plaintiff's removal from that unit on August 28 due to threats to Plaintiff's safety, and asked Defendants Norris and Parker not to house him in that unit. Nevertheless, Plaintiff was returned to unit 2-B-19.

On November 27, 2013, while walking to the showers in the 2-B unit, Plaintiff was assaulted by another inmate with a prison-made dart. Video was made of the dart and Plaintiff's wound for ADOC's file. As a result of the attack, Plaintiff had to receive HIV and Hepatitis vaccinations and medications, which caused him 30 days of intense pain and sickness.

As a result of the assault, Plaintiff was again put through the 805 process. However, as before, he was denied protective custody. Plaintiff was, however, moved to unit CB4, where he again requested protective custody. That request, and a subsequent appeal, was denied.

On April 15, 2014, Plaintiff was notified by prison medical staff that he had contracted Hepatitis C. On April 17, 2014, Plaintiff reviewed his medical file. The file included blood tests both before and after he was assaulted with the dart on November 27, 2013. Plaintiff avows that the tests show he was negative for Hepatitis C before the dart attack, and positive for Hepatitis C after the dart attack.

On May 30, 2014, Plaintiff was informed by a prison officer that the Aryan Brotherhood had put a hit out on Plaintiff's life. Plaintiff requested protective custody, and is currently going through the 805 process.

Additionally, Plaintiff asserts that the repeated denials of protective custody have caused him stress and have affected his mental health to the point that he wants to harm himself. Plaintiff alleges that he has made Defendant French, a mental health doctor at ASPC-Florence, aware of his mental health issues, but that Defendant French has told Plaintiff there is nothing he (i.e., Defendant French) can do to help Plaintiff obtain protective custody.

Finally, Plaintiff asserts that Defendant Smith's job is to review and decide all requests for protective custody and 805 appeals. Plaintiff asserts that Defendant Smith's name appears on all letters stating why each 805 appeal is denied.

**IV.    Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

An Eighth Amendment claim requires a sufficiently culpable state of mind by the Defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. To state a claim of deliberate indifference, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious"; and the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

### A. Defendants Ryan and Hetmer

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo*, 423 U.S. at 371-72, 377. Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone else who allegedly violated a plaintiff's constitutional rights does not make the supervisor liable. *Monell v. Dep't of Soc. Svcs. of New York*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Plaintiff has not alleged that Defendants Ryan or Hetmer personally participated in a deprivation of Plaintiff's constitutional rights, were aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Thus, the Court will dismiss without prejudice Defendants Ryan and Hetmer.

### B. Defendant Evans

Plaintiff has failed to state a claim against Defendant Evans for which relief could be granted. The only reference to Defendant Evans within Plaintiff's Complaint is that Defendant Evans filled out the 805 process paperwork on Plaintiff's behalf after Plaintiff was threatened by inmate "Dirt Bike." These facts do not support an allegation that Defendant Evans was "deliberately indifferent" to Plaintiff's safety. Accordingly, Defendant Evans will be dismissed without prejudice.

### C. Defendant Brown

Plaintiff makes two allegations against Defendant Brown. First, that Defendant Brown was deliberately indifferent when he told Plaintiff that it was "not his problem" that Plaintiff had not received a response to his request for protective custody. Second,

Plaintiff alleges that Defendant Brown failed to follow security protocol when Plaintiff was assaulted by inmate Randolph. Neither allegation sufficiently states a claim against Defendant Brown for which relief could be granted.

With regard to Plaintiff's first allegation, Plaintiff has not alleged that Defendant Brown could have done anything about Plaintiff's request for protective custody. Plaintiff's Complaint alleges that it was Defendant Smith, not Defendant Brown, who was responsible for approving or denying requests for protective custody. Accordingly, while Defendant Brown may have been, as Plaintiff puts it, "deliberate[ly] indiffer[ent] toward the Plaintiff's *request*," he was not deliberately indifferent toward Plaintiff's *safety*.

With regard to Plaintiff's second allegation, Plaintiff has not alleged that Defendant Brown let inmate Randolph out of his cell, that Defendant Brown knew that inmate Randolph was out of his cell, or, even had he known, that inmate Randolph posed a substantial risk to Plaintiff's safety. Accordingly, Plaintiff has failed to state a claim against Defendant Brown for which relief could be granted, and he will be dismissed without prejudice.

### D.     Defendant French

Plaintiff has failed to state a claim against Defendant French for which relief could be granted. The only allegation against Defendant French in Plaintiff's Complaint is that Defendant French told Plaintiff "there is nothing he can do to help Plaintiff [with the] protective custody issue." However, Plaintiff does not allege that Defendant French had any authority to assist or approve Plaintiff's requests for protective custody. While Plaintiff does allege he suffered from mental health issues and that Defendant French was aware of those issues, he does not allege that Defendant French failed to treat those issues. Accordingly, Plaintiff has failed to allege facts sufficient to support an allegation that Defendant French was "deliberately indifferent" to Plaintiff's health and safety, and he will be dismissed without prejudice.

### V. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has adequately stated Eighth Amendment claims against Defendants Fizer, Norris, Parker, and Smith. The Court will require these Defendants to answer the Complaint.

### VI. Warnings

#### A. Release

If released from custody, Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

#### B. Address Changes

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

#### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

#### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3) Defendants Ryan, Hetmer, Evans, Brown, and French are **dismissed** without prejudice.

(4) Defendants Fizer, Norris, Parker, and Smith must answer the Complaint.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Fizer, Norris, Parker, and Smith.

(6) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

      (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

      (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

1       (13)    This matter is referred to Magistrate Judge Michelle H. Burns pursuant to
2  Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as
3  authorized under 28 U.S.C. § 636(b)(1).
4       Dated this 8th day of July, 2014.

> David G. Campbell
> United States District Judge

TERMPSREF